## NOVEMBER TERM, 1873.    151

McCaslin *et ux. v.* The State, *ex rel.* Evans, Auditor of State.

---

## McCASLIN ET UX. *v.* THE STATE, EX REL EVANS, AUDITOR OF STATE.

| 44 | 151 |
| 142 | 186 |
| 142 | 326 |
| 44 | 151 |
| 144 | 205 |
| 44 | 151 |
| 152 | 16 |

VENDOR AND PURCHASER.—*Contract.—Injunction.—Receiver.—Waste.*—In a suit by the vendor in a contract for the sale of land for the recovery of the purchase-money, where the vendee is insolvent, is in possession, has committed waste, and threatens to materially injure the property by cutting down and removing timber, the court may grant an injunction restraining the commission of waste and appoint a receiver to take charge and possession of the land.

SAME.—*Additional Security.—Waiver.—Mortgage.—Purchase-Money.* — One who has contracted to convey land, not having parted with the legal title, does not, by taking a mortgage of other real estate as additional security for the payment of the purchase-money, waive any right to recover the purchase-money by sale of the land which he has agreed to convey; he holds the legal title as a security for the unpaid purchase-money, and all the incidents of a mortgage, so far as the lien is concerned, attach to the contract of sale.

SAME.—*Pleading.*—The vendor in a contract for the sale of land, who has taken as security for the payment of the purchase-money a mortgage of real estate

152. SUPREME COURT OF INDIANA.

McCaslin *et ux.* *v.* The State, *ex rel.* Evans, Auditor of State.

other than that embraced in said contract, need not first exhaust such mortgaged property, before instituting proceedings against the vendee to recover the purchase-money, by judgment and the sale of the real estate described in said contract. Nor, where the vendor has instituted such proceedings, is the pendency of a suit to foreclose such mortgage, or a decree of foreclosure of such mortgage and for the sale of the mortgaged property, a bar to such proceedings; but the sale under such decree may be pleaded and shown as a credit of the amount received on such sale.

SAME.—*Evidence.*—In a proceeding by the vendor in a contract for the sale of land, for the recovery of the purchase-money, under section 791 of the code (2 G. & H. 334), the note given for the purchase-money, the contract of sale, a deed made by the vendor to the vendee, and testimony of the tender of such deed and of demand of possession of the real estate in the contract described, made before suit, are admissible in evidence.

SAME.—*Deed.*—*Tender.*—*Waiver.*—The vendor, before proceeding by suit to enforce the recovery of the purchase-money, must tender a deed, unless the vendee has waived such tender.

SAME.—*Parties.*—*Auditor of State.*—An action for the recovery of the purchase-money of land sold by the State, against a person holding by a contract of purchase, is properly brought in the name of the State, on the relation of the Auditor of State.

SAME.—*Contract.*—*Defect of Cured by Deed.*—*Tender.*—*House of Refuge.*—Where the governor of the State and the commissioners of the House of Refuge were by statute authorized to sell certain real estate, and on the sale a contract was executed by the governor and by the president only of the board of said commissioners (of whom there were three), and the governor was authorized upon payment of the purchase-money to execute, in the name of the State, a deed to the purchaser attested by the secretary and seal of State, and such a deed was tendered to the purchaser, on condition that he paid the purchase-money, which was due and unpaid;

*Held,* that the tender of said deed cured any irregularity, if any existed, in the execution of said contract.

SAME.—*Estoppel.*—*Possession.*—*Title.*—A purchaser of real estate, who takes and claims possession and title by virtue of his purchase and from no other source, cannot, while so claiming, as a defence to the payment of the purchase-money, deny the right of his vendor to sell to him.

SAME.—*Receiver.*—Where a purchaser takes possession of and claims real estate by virtue of his purchase, and is in possession at the commencement of an action for the recovery of the purchase-money and for the appointment of a receiver to take charge and possession of the real estate pending litigation, because of waste committed and threatened by the purchaser, the appointment of a receiver is not such a change of possession as to estop the vendor from enforcing his remedy.

SAME.—*Judgment.*—*Subrogation.*—*Specific Performance.*—Under the provisions of section 791 of the code (2 G. & H. 334), in an action for the recovery of purchase-money against a person holding a contract for the purchase

## NOVEMBER TERM, 1873. 153

McCaslin *et ux. v.* The State, *ex rel.* Evans, Auditor of State.

of land, who is insolvent, the court may decree the sale of the interest of such person in the land, the subrogation of the purchaser to the rights of such person, and that upon the payment of all the purchase-money stipulated to be paid by the contract within a stated time, the vendor in said contract shall convey the land to the purchaser at such sale.

CONSTITUTIONAL LAW.—*Title of Act.*—*House of Refuge.*—In the act of the General Assembly entitled " An act to establish a House of Refuge for the correction and reformation of juvenile offenders," the section providing that certain real estate should be sold and the proceeds applied toward the purchase of other grounds and the erection of suitable buildings for the institution, is not objectionable, on the ground that it violates the constitutional requirement that " every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."

From the Marion Circuit Court.

*C. H. Test, D. V. Burns,* and *G. S. Wright,* for appellants.
*L. Barbour* and *C. P. Jacobs,* for appellee.

BUSKIRK, J.—The State of Indiana, by her governor and the board of commissioners of the House of Refuge, sold to William McCaslin the tract of land hereinafter described, upon the terms in the title bond or certificate of sale set forth in the pleadings. McCaslin made no payment, but committed wilful waste upon the premises. The State tendered a deed to the purchaser and demanded payment. The demand not being complied with, she demanded possession of the premises and notified said McCaslin to commit no more waste. The purchaser refusing to comply with the latter request, the State, upon the relation aforesaid, filed her complaint in the Marion Circuit Court to foreclose the interest of the purchaser, to recover a judgment for the debt, and to subject the interest of the purchaser to sale. The State also asked for an injunction against said McCaslin, to restrain him from committing further waste, and for the appointment of a receiver to take possession of the premises.

The injunction was granted and a receiver appointed to take charge of the land, etc. On the final trial, the State recovered judgment for the price agreed to be paid and interest, except a small amount which had been bid by the

State upon another tract of land, which had been mortgaged to secure the payment of the purchase-money. The court also decreed a foreclosure of the interest of William McCaslin in the premises and ordered it to be sold upon execution.

We give below a copy of the complaint and exhibits, the answers which set up the substance of the defence, and replies.

The following is a copy of the complaint:

"The State of Indiana, on the relation of John D. Evans, Auditor of State, *v.* William McCaslin, Margaret McCaslin, his wife, John Tomlinson, George Ketrow, Philip Verneida, and Hunter McCaslin.

"The State of Indiana, on the relation of John D. Evans, auditor, complains of William McCaslin, Margaret McCaslin, his wife, John Tomlinson, George Ketrow, Philip Verneida, and Hunter McCaslin, and says that heretofore, to wit, on the 10th day of June, 1867, the State of Indiana, being the owner in fee simple, in her own right, of the following tract of land, situated in Marion County, State of Indiana, to wit: (here the tract of land is described by metes and bounds), containing one hundred acres, with the privileges and appurtenances thereunto belonging, made a contract with the defendant William McCaslin for the sale of said tract of land to him for the sum of seven thousand five hundred dollars, payable in three equal instalments of two thousand five hundred dollars each, with interest from date, the first payable the 15th day of October, 1867; the second payable the 27th day of May, 1868; and the third on the 27th day of May, 1869; for which payments the said William McCaslin gave his promissory note, of the tenor above set forth as to the amount, terms, and interest; copies of said agreement and note, which were in writing, are filed herewith and made a part of this complaint. And it was stipulated in said agreement that upon the payment of the purchase-money according to the tenor and effect of the said promissory note, the purchaser, the defendant William McCaslin, should be entitled to a deed in fee simple

from the State of Indiana for said tract of land. The plaintiff further alleges that at the time of said agreement to purchase, the said William McCaslin went into possession as a purchaser, yet he has never paid any part of the purchase-money, and the whole and every part thereof, with the interest, still remains unpaid.

"And the plaintiff further says that the said William McCaslin has committed waste upon said premises so as to impair materially the value of said tract of land and the security of said debt, in this, that said land had thereon a large amount of wood and timber of great value, to wit, of the value of five thousand dollars; and said William McCaslin has cut and carried from said tract of land a large amount of wood and timber since he has been in possession as such purchaser, without the consent of the State of Indiana, to wit, the amount of three thousand dollars, and has also cut a large amount of wood and timber upon said tract of land, without the consent of the State of Indiana, to wit, to the amount of ———— thousand dollars, and is now engaged in hauling the same to market, and is prepared to haul such wood and timber off the land, so as to leave it entirely bare, whenever he may be informed that the State is ready to enjoin such waste.

"The plaintiff further says that on the 14th day of September, 1868, the State of Indiana caused a deed in fee simple for said premises to be properly executed, acknowledged, and prepared for delivery, and tendered the same to said William McCaslin, upon condition that he should pay the purchase-money, but the said William McCaslin refused to pay any part of said purchase-money.

"And afterward, on the 26th day of December, 1870, the plaintiff caused a written notice to be served upon said William McCaslin, demanding of him the possession of said tract of land and forbidding him to exercise any further acts of ownership over said tract of land; that he should cut no more wood or timber thereon, and that he should not remove any wood or timber, or other thing of value there-

from, until he should have complied with his contract, and should have paid to the State of Indiana the full amount of principal and interest due for said land.

"The plaintiff further says that John Tomlinson, George Ketrow, Philip Verneida, and Hunter McCaslin are combining and conspiring with the said William McCaslin, to cut, waste, and destroy the timber upon said land, and are now engaged in cutting and carrying away the timber and wood from the said tract of one hundred acres.

"The plaintiff further says, that there is an emergency in this case, in this, that the said William McCaslin, John Tomlinson, George Ketrow, Philip Verneida, and Hunter McCaslin are now engaged in cutting wood and timber and carrying away the same; that there is a large amount of wood and timber now cut down and lying upon the premises, which will be removed by them, if notice of this proceeding be given, before a restraining order can be procured, and the State will thereby suffer great and irreparable loss.

"The plaintiff further shows that, because no part of the consideration was paid for the premises so sold to the said William McCaslin, and because he gave no personal security for payment to the State of Indiana, the defendant William McCaslin and Margaret McCaslin, his wife, executed, acknowledged, and delivered to the State of Indiana a mortgage upon sixty-five acres, in section one, in township fifteen, north of range two east, in Marion county, and described as follows: (here the premises are described by metes and bounds) which was duly recorded among the records of mortgages in the recorder's office of Marion county, State of Indiana, June 14th, 1867. A suit has been commenced to foreclose said mortgage in the circuit court of Marion county, and the said Margaret, in defending said suit, pleads under oath that said mortgage is not her act and deed, and insists that she is not bound thereby, and that the fee simple interest in said tract of land of sixty-five acres belongs to her, and that the said William McCaslin has no other interest in it than as her husband.

McCaslin *et ux. v.* The State, *ex rel.* Evans, Auditor of State.

" The said William McCaslin is also committing waste upon the said sixty-five acres, in this, that he is cutting off and selling all the valuable timber and wood, and hauling the same to the city of Indianapolis and disposing of them.

" The plaintiff further says that both of said tracts of land have been so despoiled and wasted that the debt due the plaintiff has been jeopardized, the security has become insufficient, and there is great danger that the State of Indiana will not be able to collect her debt, in consequence of the security having been diminished by the wrongful acts of the defendants.

" The plaintiff says that the said William McCaslin is totally insolvent, or so nearly so that no more than one dollar can be collected of him by any process of law.

" The plaintiff prays that the said William McCaslin, John Tomlinson, George Ketrow, Philip Verneida, and Hunter McCaslin may be enjoined from cutting any more wood or timber upon the said tract of one hundred acres, or carrying away any wood or timber, or other thing of value, until said debt shall have been paid, and that all persons acting under, or by authority of, or in any connection with, the defendants, may be enjoined from committing any further trespass or waste upon the premises.

" And the plaintiff further prays that, inasmuch as the security of the State for said debt has already been greatly diminished by the fraudulent and illegal conduct of the defendant William McCaslin, the purchaser of the premises, a receiver may be appointed to take possession of said one-hundred-acre tract of land and all the timber and wood now upon the premises, and all other articles of value, and to receive all the rents and profits that may accrue from the use of said premises, and she prays for such necessary orders of the court as may be required for the receiver that may be appointed to take possession of and maintain the possession of said premises.

" And the plaintiff further prays that upon the issues being formed in this case, and the facts of the indebtedness being

found for the plaintiff, the court will decree that said one-hundred-acre tract of land may be ordered to be sold, as other lands are sold upon execution, to pay and satisfy the debt due to the State of Indiana, and that said contract of purchase may be foreclosed, that the purchaser and all persons claiming under or·through him may be barred of all the rights acquired by such purchase.

"And the plaintiff further prays that the defendants William McCaslin and Margaret McCaslin, may be enjoined from committing waste upon the said sixty-five-acre tract of land, and from permitting any other person to commit waste thereon, by cutting wood or timber or carrying the same away from the premises, or carrying away any other article of value from said premises.

" BARBOUR, JACOBS & SMITH,<br>" For the Plaintiff.

" STATE OF INDIANA, Marion County :

" Personally appeared in open court Charles W. Smith, who being duly sworn, upon oath says that the facts set forth in the foregoing petition are true as he verily believes, except the facts as to the waste committed upon the sixty-five-acre tract of land, respecting which he has no knowledge sufficient to form a belief.          CHARLES W. SMITH.

" Subscribed and sworn to in open court, January 12th, 1871.          WM. J. WALLACE, Clerk.

" John W. Tanner, being duly sworn in open court, says that the entire foregoing bill of complaint has been read to him, and he says that the facts therein stated are true in substance and fact.

his<br>", JOHN W. ⋈ TANNER,<br>mark.

" State of Indiana, *ex rel.* the Auditor of the State of Indiana, *v.* William McCaslin, Margaret McCaslin, John Tomlinson, Philip Verneida, and Hunter McCaslin.

" We undertake that the plaintiff, the State of Indiana, shall

pay to the above named defendants all damages and costs that may accrue by reason of the injunction in this action.

"Conrad Baker,

"Lucian Barbour.

"Approved by the court January 13th, 1871.

"Attest:                    Wm. J. Wallace, Clerk."

The following is a copy of the agreement of sale, called a title bond, which was made an exhibit and part of the complaint, to wit:

"This agreement, made this 10th day of June, 1867, between the State of Indiana, of the first part, and William McCaslin, of the second part, witnesseth: That, whereas the acting governor of the State and the board of commissioners of the House of Refuge, created by the act approved March 8th, 1867, entitled 'An act to establish a House of Refuge for the correction and reformation of juvenile offenders,' have, in pursuance of the twenty-sixth section of the said act, bargained and sold to the said William McCaslin the tract of land containing one hundred acres, mentioned in said twenty-sixth section, for the price of seven thousand five hundred dollars; and whereas the said William McCaslin has given his promissory note for said sum of seven thousand five hundred dollars, bearing even date herewith, and payable with interest from date, and without any relief from valuation or appraisement laws, the same being in three equal instalments of two thousand five hundred dollars each, the first payable, with interest thereon, on the 15th day of October, 1867, and the second payable, with interest thereon, on the 27th day of May, 1868, and the third payable, with interest thereon, on the 27th day of May, 1869.

"Now this instrument witnesseth, that the said William McCaslin, upon the full payment of the said purchase-money, according to the tenor and effect of the said promissory note, will be entitled to receive from the State a deed for said tract of land, conveying the same to him; the same to be executed by the State, as provided for in said twenty-sixth section.

In witness whereof, I, Conrad Baker, Lieutenant-Governor of the State of Indiana, acting as Governor thereof, and the said Board of Commissioners of said House of Refuge, hereto subscribe their names the date first aforesaid.

"CONRAD BAKER,

"Lieutenant-Governor of Indiana,

"Acting as Governor thereof.

"C. F. COFFIN,

"President of Commissioners of House of Refuge."

The following is a copy of the promissory note, which was also made an exhibit of the complaint:

"$7,500.00.     INDIANAPOLIS, IND., June 10th, 1867.

"I promise to pay to the State of Indiana the sum of seven thousand five hundred dollars, without relief from valuation or appraisement laws, payable in instalments, as follows: that is to say, one-third part thereof, amounting to twenty-five hundred dollars, with interest thereon, the 15th day of October, 1867, one-third part thereof, amounting to the like sum of twenty-five hundred dollars, with interest thereon, on the 27th day of May, 1868, and the remaining third part, amounting to the sum of twenty-five hundred dollars, with interest thereon, on the 27th day of May, 1869.

"And I further stipulate that if the first of said instalments should not be paid at the time hereinbefore specified for the payment thereof, then and by such failure to pay the second and the third instalments shall immediately become due and payable; and if the said second instalment shall not be paid at the time specified for the payment thereof, then and thereby the third of said instalments shall immediately become due and payable.

"This note is given for the purchase-money of a tract of land containing one hundred acres, more or less, mentioned and described in the twenty-sixth section of an act of the General Assembly of the State of Indiana, approved March 8th, 1867, entitled 'An act to establish a House of Refuge for the correction and reformation of juvenile offenders.'

"WILLIAM McCASLIN."

There was another exhibit filed with the complaint, being a mortgage made to secure the debt. It was alleged that McCaslin was committing waste both upon the land which the State sold to him and upon the land mortgaged to secure the debt. The following is a copy of the mortgage:

"This deed of mortgage made this 10th day of June, 1867, between William McCaslin and Margaret McCaslin, his wife, parties of the first part, and the State of Indiana, of the second part, witnesseth: That the said parties of the first part, for and in consideration of the indebtedness hereinafter mentioned and to secure the payment of the same, do hereby convey and mortgage to the said party of the second part the following real estate, situated in section one (1), township fifteen (15), north of range two east, in Marion county, Indiana, and containing sixty-five acres, it being the same tract set apart to the said Margaret by a decree of partition, rendered by the Marion Circuit Court, on the 23d day of September, 1861, in a partition suit, wherein Samuel Albright and others were plaintiffs, and John Albright and others were defendants, the said Margaret being at the time of the rendition of the decree unmarried, and the said sixty-five acres having been set off to her in said partition by her then name of Margaret Albright, reference being had to said decree for a particular description of said sixty-five acres.

"The condition of this mortgage is such, that whereas the acting governor of the State and the board of commissioners of the House of Refuge for the correction and reformation of juvenile offenders, created by the act approved March 8th, 1867, entitled 'An act to establish a House of Refuge for the correction and reformation of juvenile offenders,' have this day bargained and sold to the said William McCaslin the tract of land mentioned in section twenty-six of said act, for the price of seven thousand five hundred dollars. And whereas the said William McCaslin has executed and delivered his promissory note, bearing even date here-

with, payable to the State of Indiana, for the sum of seven thousand five hundred dollars, with interest from date and without relief from valuation or appraisement laws, payable in instalments as follows, to wit:

"Twenty-five hundred dollars, with interest thereon, the 15th day of October, 1867, twenty-five hundred dollars, with interest thereon, on the 27th day of May, 1868, and the remaining twenty-five hundred dollars, with interest thereon, on the 27th day of May, 1869; which promissory note contains a stipulation that if the said William McCaslin should fail to pay the first instalment thereof when due, then by such failure the second and third instalments should immediately become due and payable, and that if he should fail to pay the second instalment when it becomes due, then by such failure the third instalment should immediately become due and payable.

"Now the condition of this mortgage is such, if the said William McCaslin shall pay the said promissory note according to the tenor and effect thereof, then this mortgage shall be void, otherwise it shall be and remain in full force and virtue.

"In witness whereof, the said William McCaslin and Margaret McCaslin, his wife, have hereunto subscribed their names the date first aforesaid.

"WILLIAM McCASLIN,     [Seal.]<br>
"MARGARET McCASLIN,   [Seal.]"

This mortgage was duly acknowledged before a notary public the 13th day of June, 1867, and was duly recorded.

The complaint alleged that the promissory note was due and remained wholly unpaid, and before the commencement of this suit the plaintiff tendered to William McCaslin a deed, of which the following is a copy:

"Whereas the General Assembly of the State of Indiana, in an act thereof approved March 8th, 1867, and found upon pages 137, 138, 139, 140, 141, 142, 143, 144, and 145 of the Acts of 1867, entitled 'An act to establish a House of Refuge for the correction and reformation of juvenile offenders,'

did authorize the governor of said State, and the commissioners of said House of Refuge, in the twenty-sixth section of said act, to sell certain lands therein described for cash or on credit, and apply the proceeds thereof toward the purchase of other grounds and the erection of suitable buildings for the institution, and declaring that upon the full payment of the purchase-money, the governor in said case should be authorized, in the name of the State, to execute a deed to the purchaser, attested by the secretary and seal of the State; and whereas, in pursuance of the power thus given and in order to carry out the purposes therein mentioned, the acting governor of said State, together with the commissioners of the said House of Refuge, did, on the 10th day of June, 1867, sell unto William McCaslin, of Marion county, Indiana, the lands so authorized to be sold for the sum of seven thousand five hundred dollars; and whereas the purchase-money of said lands has been paid in full by the said William McCaslin, thereby entitling him to receive a deed of conveyance for said lands; now, therefore, in order to carry out in good faith the terms of the contract of sale of said lands, and the provisions of the twenty-sixth section of said act of the General Assembly hereinbefore mentioned: this indenture witnesseth, that the State of Indiana, by Conrad Baker, Lieutenant-Governor, acting as Governor thereof, in consideration of the said sum of seven thousand and five hundred dollars herewith paid, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, and conveyed, and does by these presents grant, bargain, sell, and convey unto the said William McCaslin certain lands situated in Marion county, Indiana, mentioned and described as follows, to wit: All that part of the south-east quarter of section one, in township fifteen north, range two east, contained in the following boundaries: Beginning in the Rockville road at the south-west corner of said quarter section, running thence north forty chains and twenty-five links to the center of said section, thence east along the north line of said quarter section twenty-one chains and forty-five links, thence south

twenty chains, thence east six chains and twenty-five links, thence south twenty chains and twenty-five links to the south line of said section, thence west along said south line in said Rockville road twenty-eight chains and twenty links to the place of beginning, containing one hundred acres. To have and to hold unto him, the said William McCaslin, his heirs, and assigns, in fee simple forever.

" In witness whereof, the said Conrad Baker, Lieutenant-Governor, acting as Governor of the State of Indiana, and in behalf of said State of Indiana, has hereunto subscribed his name, at the executive chamber, in the city of Indianapolis, this 31st day of August, 1868, and has caused the great seal of the State to be hereunto affixed, with the attestation of the Secretary of State, as provided by the act aforesaid.

"Conrad Baker,

"Lieutenant-Governor of Indiana,

"Acting as Governor thereof.

"Attest: Nelson Trusler,

"Secretary of State.

"Indianapolis, Indiana, Aug. 31st, 1868.

[Seal.]

"State of Indiana, Marion County.

" On the day above named, personally appeared before the undersigned, a notary public within and for said county, Conrad Baker, Lieutenant-Governor of the State of Indiana, acting as Governor thereof, who, in his official capacity, duly acknowledged the execution of the within and foregoing deed of conveyance.

" In witness whereof, I have hereunto subscribed my name and affixed my official seal, as notary public in and for said county, on the day and year above stated.

[Seal.]         "John J. Hayden, Notary Public.

The defendants pleaded the general denial and several special pleas.

There was a joint answer filed by all the defendants, but we do not deem it necessary to set it out in this opinion, as

the second paragraph of the separate answer of appellant McCaslin includes the substance of the joint answer, and, besides, no judgment was rendered against any of the defendants but McCaslin and wife, who alone appeal. The second paragraph of the separate answer of McCaslin was in substance as follows :

And for second and further answer herein, the defendant William McCaslin says that on the ——— day of June, 1867, he purchased from the plaintiff, the State of Indiana, the following described real estate, situated in Marion county, Indiana, to wit : (here follows a description of the one hundred acres), said to contain one hundred acres, for the sum of seven thousand five hundred dollars, payable in instalments as in the complaint is alleged, and that he was put into possession thereof by Conrad Baker, acting Governor of the State of Indiana, who was fully authorized to make such sale and place the defendant in possession thereof.

That to secure the payment of the purchase-money for the said land, the defendant William McCaslin and Margaret McCaslin, his wife and co-defendant, executed and delivered to the plaintiff a mortgage on the sixty-five-acre tract of land, as mentioned and described in the complaint; that when a portion of the purchase-money became due, the plaintiff brought suit in this court to foreclose said mortgage and subject said sixty-five-acre tract of land to sale to pay the plaintiff's debt, and that said suit is still pending and undetermined in this court; that by the terms of said sale of said one hundred acres of land, this defendant, upon the full payment of the purchase-money, was to receive a good and sufficient warranty deed for the same from the plaintiff; that in the suit pending as aforesaid to foreclose said mortgage, the defendants allege, among other things, that the plaintiff does not possess, and cannot make and convey, a full and perfect title to said tract of land so sold as aforesaid. And this defendant is informed by his legal advisers, and he believes, that the State of Indiana cannot make a good, free, and perfect title to the same, and at no time has she made

and tendered to this defendant a good and perfect title to the land so sold to him as aforesaid ; that the sixty-five-acre tract of land so mortgaged as aforesaid is well worth the sum of six thousand dollars, with all the merchantable timber removed therefrom, and that he is entitled, by the terms of said mortgage, to the possession, rents, and profits until the final determination of the suit pending between him and the plaintiff in reference to the foreclosure thereof.

That as to the one-hundred-acre tract of land, the defendant says, that since his purchase and possession thereof, he has cut and removed timber therefrom of the value of one thousand dollars, and no more ; but it was agreed and understood between this defendant and Conrad Baker, Governor as aforesaid, that he, defendant, should cut and remove from said premises such timber as he saw proper, and that all such cutting and removing timber therefrom has been by reason of said understanding and agreement; that the timber so cut and removed, as aforesaid, from said one-hundred-acre tract has been for the purpose of clearing and preparing the same for cultivation, and that said land has not been damaged in value one dollar by reason thereof; that this defendant has made valuable and lasting improvements on said one-hundred-acre tract of land, to the amount and value of at least one thousand dollars, and that the security to the State for her purchase-money is ample and sufficient, and equally as good, if not better, than at the time of said sale to the defendant.

That the one-hundred-acre tract of land is of the reasonable value of one hundred dollars per acre, with all the timber removed therefrom; and he denies any and all conspiracy with his co-defendants, or either of them; and he denies that he is cutting and destroying timber on said one-hundred-acre tract of land, or either of his co-defendants, and were not so cutting, wasting, and removing any timber at the commencement of this suit.

Wherefore the defendant William McCaslin prays that the plaintiff's complaint may be dismissed, and the tempo-

rary injunction heretofore granted by the court may be dissolved, and for all other proper relief in the premises.

The answer above set out was verified by the oath of the defendant William McCaslin. Issues were formed upon the answers filed.

Afterward, at a subsequent term, the defendant William McCaslin filed the third and fourth paragraphs of his answer, as follows:

"And for third and further answer in this behalf, said William McCaslin says that heretofore, to wit, at the ——— term, 187–, of this court, by the judgment and consideration thereof, the plaintiff recovered, by a decree of said court against the said William McCaslin and Margaret McCaslin, his wife, the full amount of the said notes mentioned in the complaint, together with a foreclosure of the mortgage executed to secure the payment of said notes in the proceeding specified in the complaint, to wit, said sixty-five acres of land; by which judgment and decree it was ordered that said sixty-five acres of land be sold as other lands are sold on execution, and that in case the same should not sell for a sufficient sum to pay said decree, then the residue to be made of the goods and chattels, lands and tenements of said William McCaslin; wherefore said defendants pray judgment, etc.

"And for fourth and further answer in this behalf, said William McCaslin says that true it is the State of Indiana caused a deed to be executed and tendered to this defendant at the time specified; but this defendant says that the State of Indiana had no title to said land except as provided in a quit-claim deed purporting to be executed by one James H. McKernan, as the agent of James P. Drake and Priscilla Drake his wife, to said State, wherers, in truth and in fact, said James H. KcKernan had no legal authority to execute said deed as such agent, and that the title to said land is still in said Drake and wife; wherefore said defendant prays judgment,"

To which the plaintiff replies, first, the general denial; secondly, as follows:

"And for second paragraph of reply to the third paragraph of answer, the plaintiff says that it is true, as alleged in said answer and in the complaint, that a certain tract of land was mortgaged as collateral security for the purchase-money of the said one-hundred-acre tract of land; and it is true that, because the entire purchase-money for the tract of land remained due and unpaid, the said collateral mortgage has been foreclosed, and the land sold for the sum of eight hundred dollars, and no more, which left, after paying costs, about the sum of six hundred and fifty dollars to be applied to said debt, and that a large amount of said debt, principal, and interest, to wit, about nine thousand dollars, still remains due and unpaid, and it is also alleged in the complaint, that said William McCaslin is totally and notoriously insolvent and worthless. And it is also true that there is no other security for said debt; that said mortgaged tract of land is encumbered to a large amount, to wit, three thousand dollars, which has precedence over the debt due to the State of Indiana. And the plaintiff further says that the one-hundred-acre tract of land is held primarily for said debt; that the title thereto has all the time remained in the State; that the defendant William McCaslin has no title or right of possession, and has never paid any part of the purchase-money, and it is not true that he has any right to retain said land against the State of Indiana. And it is true that said one-hundred-acre tract of land now constitutes the only remaining fund for the discharge of said debt. And this the plaintiff will verify and prove as the court shall direct.

"3. And for reply to the fourth paragraph of the answer, the plaintiff, not admitting any fact therein alleged, says that the defendant William McCaslin having purchased said land, taken possession thereof, and held the same to this date, and having, as alleged in the complaint, cut off a large amount of wood and timber, to wit, five thousand dollars worth, and still remaining in possession of said one-hundred-acre tract, and having paid nothing therefor, while refusing to restore the possession thereof to the State, and refusing to pay any

part of the purchase-money, is estopped from setting up a defect of title to the one-hundred-acre tract of land. And the plaintiff prays judgment that the defendant William McCaslin be estopped from pleading such defect of title."

There was a demurrer filed to the third and fourth paragraphs of reply, which was overruled.

The case was tried by a jury, and after the argument of counsel, the court instructed the jury as follows:

"1. You are the exclusive judges of what facts are proven. A preponderance of evidence in favor of the existence of a fact is sufficient to justify your finding that such fact exists. You are the judges, also, of the credibility of the witnesses. The plaintiff is the State, on the relation of the auditor, and this suit is properly brought in the name of the State, on such relation.

"2. The fact that the State took a mortgage on sixty-five acres of land of the wife of the defendant William McCaslin, to secure the payment of the purchase-money of the land in the complaint described, is no defence to this action to foreclose the right of defendant William McCaslin, under the title bond or contract of sale mentioned in the complaint, save and so far, by reason of the sale on a foreclosure of a mortgage, the State has received part payment of said purchase-money, when the amount so received would be a credit on the amount due of said purchase-money.

"3. It is not necessary that the plaintiff should have exhausted the first property before commencing this suit to foreclose.

"4. As to the contract of sale, if you find that it was executed by the governor of the State and the commissioners, it is sufficient, where there is no other or contradictory testimony, as *prima facie* evidence of the sale of the land as therein stated under the provisions of the statute.

"5. The State must show by a preponderance of evidence, that before this suit was commenced, the State tendered a deed, or that the defendant William McCaslin waived such

tender.   Such tender may have been made by any person so requested by the governor.

"6. To entitle the plaintiff to a verdict in her favor, you must find from the evidence that there was a sale of the land to the defendant William McCaslin, that the purchase-money is unpaid, and that a deed for the land was tendered to him before the commencement of this action."

The jury returned a general verdict, which is as follows:

" We, the jury, find for the plaintiff."

They also answered interrogatories propounded by the plaintiff:

"1. Did William McCaslin execute the note sued on for seven thousand five hundred dollars, on the 10th day of June, 1867?

"Ans. Yes.

"2. Did he receive from the state authorities the title bond, a copy of which is filed with the complaint, at the same time?

" Ans. Yes.

"3. Has William McCaslin ever paid any part of the note, principal or interest? if so, how much?

"Ans. None.

"4. Has the State ever received any part of the debt evidenced by the note, except about eight hundred dollars bid by her at a sheriff's sale, on the foreclosure of a mortgage on another tract of land?

"Ans. No.

"5. Did the plaintiff tender the defendant William McCaslin a deed for said one-hundred-acre tract of land before the commencement of this suit, and demand a performance of his contract for payment?

"Ans. Yes.

"6. Did plaintiff demand possession of the one-hundred-acre tract of land from defendant William McCaslin before the commencement of this suit, to wit, on the 26th day of December, 1870, and did not McCaslin refuse to give up possession of the land?

"Ans. Yes.

"7. Was William McCaslin in possession of said one-hundred-acre tract of land at the time of the commencement of this suit?

"Ans. Yes.

"8. What amount is due on said note, principal and interest, to date?

"Ans. Nine thousand four hundred and thirty-five dollars.

"W. H. McLAUGHLIN, Foreman."

The defendant William McCaslin moved for a new trial. The motion was overruled, and he excepted, and the court rendered judgment upon the verdict and answers to interrogatories. There was also a motion in arrest of judgment, which was overruled, and the defendant excepted.

The decree is as follows:

"That the plaintiff, the State of Indiana, recover of and from the defendants the possession of the land mentioned in the complaint, situated in Marion county, Indiana, and described as follows: (here the one-hundred-acre tract is described as in the complaint) with the appurtenances and privileges thereunto belonging, and that an execution issue herein reciting the foregoing recovery, requiring the sheriff of Marion county aforesaid to deliver possession of said tract of land to the State of Indiana, or her agent. And it is further ordered, adjudged, and decreed that there is due to the State of Indiana from the said William McCaslin, on the promissory note given for the purchase-money of said land described in the complaint, the sum of nine thousand four hundred and thirty-five dollars, less the sum of six hundred and eighty-three dollars and two cents, realized by said plaintiff by the sale, under a decree of foreclosure of this court, of other real estate mortgaged by William McCaslin and Margaret McCaslin, his wife, to secure the payment of said note, leaving the net sum now due to the plaintiff from the said William McCaslin on said note eight thousand eight hundred and one dollars and ninety-eight cents; and in order that the equity of redemption of said William McCaslin and Margaret McCaslin may be forever barred and foreclosed, it

is hereby ordered, adjudged, and decreed that all their right, title, and interest of, in, and to the aforesaid one-hundred-acre tract of land, hereinbefore mentioned, bounded, and described, be sold by the proper officer, without relief from valuation or appraisement laws, as other lands are sold upon execution, for the payment of the costs of this suit, and the payment of the sum so decreed to be due to the plaintiff from the defendant William McCaslin, as aforesaid.

"And it is further ordered, adjudged, and decreed that the purchaser or purchasers, who shall purchase the interest of said McCaslin and wife in said land under this decree, shall have the right, within sixty days from such sale, to pay to the State of Indiana the balance, including interest, which may be due to the plaintiff on said promissory note, and thereby entitle him or them to have said tract of land conveyed to him or them in pursuance of the statute authorizing the sale and conveyance thereof, and upon failure of such purchaser or purchasers to pay, within the time aforesaid to the State of Indiana, the balance which may be due on said note, all the interest or equity of such purchaser or purchasers in said land shall, by such failure to pay, be forever barred and foreclosed.

"And it is further ordered, adjudged, and decreed that the receivership heretofore instituted and established by said court over said tract of land be, and the same is hereby dissolved, and the receiver heretofore appointed, Leo Clements, is hereby discharged from the duties of his trust, and is allowed the sum of fifty dollars for his services as such receiver, which shall be taxed as a part of the costs in this cause.

"And it is further considered and adjudged by the court, that the plaintiff recover of the defendant William McCaslin her costs and charges herein expended, taxed at ———— dollars, and that this cause be continued until the next term of this court for such further proceedings herein as may be necessary after said sale shall have been made and reported to this court."

McCaslin *et ux. v.* The State, *ex rel.* Evans, Auditor of State.

To the rendition of the above judgment and decree, the said William McCaslin and Margaret McCaslin, his wife, excepted. Then follows the following entry in the record: "There is an error of fifty dollars in the foregoing decree in making the subtractions, which is hereby remitted, so that the true amount shall be eight thousand seven hundred and fifty-one dollars and ninety-eight cents."

The appellants moved for a new trial for these reasons:

1. Error of court in refusing to strike out complaint.

2. Error of court in overruling demurrer to third paragraph of reply, and, also, in refusing to sustain same to the complaint.

3. Error of court in refusing instructions asked by defendants.

4. Error of court in giving improper instructions.

5. Error of court in admitting improper evidence.

6. Error of court in rejecting competent evidence offered by defendants.

7. Because the finding of the jury is contrary to the law and the evidence.

8. Because there was no evidence of the insolvency of the defendant McCaslin.

Motion overruled, and an exception entered.

The appellants then moved in arrest of judgment for the following reasons:

1. Because there was no sufficient complaint to authorize the findings of the jury.

2. The findings of the jury are vague and uncertain.

3. No law authorizing the governor and the commissioner to sell the land in controversy.

4. Not competent for the governor and Charles Coffin to sell the land described in the complaint.

This motion was overruled, and the appellants again excepted.

Numerous exceptions were taken in the court below, and quite a number of errors have been assigned upon the record in this cause, but we do not deem it necessary to dispose of

all these questions in detail, as the examination and decision of a few questions will be decisive of the case.

In the first place, it is insisted that the court below erred in restraining the commission of waste and in appointing a receiver. It seems to us that the court below committed no error in granting the restraining order. It is provided by section 137 of the code, 2 G. & H. 132, that a court may grant an injunction restraining the commission of an act, "when, during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring or suffering some act to be done, in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual."

The allegations of the complaint bring the application within the above quoted provision, and such allegations were sufficiently supported by the proof to justify the action of the court.

Nor do we think the court exceeded its power in appointing a receiver. The third clause of section 199, 2 G. & H. 152, authorizes the appointment of a receiver " in all actions when it is shown that the property, fund or rent and profits in controversy is in danger of being lost, removed or materially injured." There seems to be no room to doubt that the cutting down and removing of valuable timber from the land in controversy, and especially where the defendant only claimed the title and possession of such land under a title bond, the purchase-money being unpaid, and it being alleged and proved that the defendant was insolvent, would be such material injury as would justify the court in appointing a receiver to take charge of and preserve such land during the litigation.

It is, in the next place, very earnestly insisted by counsel for appellant, that the court erred in overruling the demurrer to the complaint, the motions in arrest of judgment, and for a new trial, upon the ground that the facts stated and proved conclusively showed that the appellee was not entitled to the relief prayed for or any part of it. The argu-

ment of counsel proceeds upon the theory that the State is seeking to enforce a vendor's lien, and that the State, having taken a mortgage upon other lands, has waived such lien, and we are referred to numerous decisions holding that, where the vendor takes a mortgage or personal security, he waives the equitable lien created by the law. There can be no doubt as to the correctness of the general proposition of law as laid down by counsel, and if applicable to this case, must result in a reversal of the judgment. But it is very obvious to us that appellants have entirely misconceived the ground upon which the appellee seeks to recover. The position of the appellee is shown by the following extract from the brief of her counsel:

"Every one knows, who has examined the authorities in reference to this maxim, that it applies only in cases where the vendor has conveyed the title to the vendee, and the question usually arises between the original vendor and a remote vendee who claims to hold a *bona fide* title clear of equities. In this case, the State does not claim a vendor's lien on the land in question. A lien is a creature of equity, or it is created by statute when there is no other claim, or right, or title than the statutory lien. This claim, the statutory lien, is usually subordinate to an equitable lien, and an equitable lien usually yields to a *bona fide* title. The State claims no lien, for she has the legal title and has never parted with it. The appellants have only an equity, and their equity depends upon the payment of the purchase-money. When the purchaser takes a title bond, he cannot demand a title until he has complied with the terms of payment. If a title bond cannot be foreclosed, it must remain subject to be enforced by a bill for specific performance, for twenty years, and there would be no remedy but for the vendor to take possession of the land and account for the rents and profits, as a mortgagee or creditor in possession. This advantage of the purchaser, who holds by title bond, is of recent discovery. In the cases referred to in the appellants' brief, the vendors had parted with their title and

claimed a vendor's lien against the holder of the legal title, or the question did not arise in the case. A vendor's lien is an equitable mortgage; but it cannot be said that the holder of a legal title has an equitable mortgage, but he holds the title subject to a claim that must be foreclosed. A title bond, a vendor's lien, and all equitable mortgages, as well as common law and statutory mortgages, in short, all liens, may be foreclosed by a bill in chancery, and the court may enforce the decree by sale of the premises, or by providing for a strict foreclosure in some cases, after a limited time to redeem."

The section of the statute upon which this proceeding is based is as follows :

"Sec. 791. In an action brought for the recovery of the purchase-money against any person holding a contract for the purchase of lands, the party bound to perform the contract, if not plaintiff, may be made a party, and the court, in the final judgment, may order the interest of the purchaser to be sold, or transferred to the plaintiff upon such terms as may be just; and may also order a specific performance of the contract in favor of the complainant, or the purchaser, in case a sale be ordered." 2 G. & H. 334.

In *Amory* v. *Reilly,* 9 Ind. 490, a title bond for land had been foreclosed, as a mortgage, by suit in chancery, and there was a decree, among other things, that said real estate be sold by the sheriff; that the proceeds be applied in payment of seven hundred and eighty-seven dollars then found due, etc.; that such sale being made, he, the sheriff, should make a deed in fee simple to the purchaser, and from thence all the legal estate and equitable estate of the defendants in and to the premises should forever cease, determine, and be foreclosed.

In this case the point made by the parties and decided by the court was, whether the sheriff had sold the estate of the vendee only in the premises, or both the estate of the vendee and of the vendor.

The court held that the terms of the decree were broad enough to include the interest of all the parties before the

court, and that the sheriff's sale passed the interest of all the parties.

Judge DAVISON uses the following language as to the character of a title bond, and how it may be foreclosed:

"The general rule is, that the vendor has a lien on the premises sold for the purchase-money, not only against the vendee himself and his heirs, but against subsequent purchasers having notice that the purchase-money is unpaid. But this rule, so far as it relates to actual notice of the lien, properly applies where the vendor has parted with the title, and not where the vendee simply holds a bond for a deed upon full payment of the purchase-money. In the latter case, a purchaser from the vendee cannot ordinarily be regarded as a *bona fide* purchaser without notice; because he might have learned the existence of the lien by examining the title of his vendor. Where the original vendor has not parted with the legal title, it must be intended that he holds it as security for unpaid purchase-money; and all the incidents of a mortgage, so far as the lien is concerned, attach to the contract of sale. An unpaid vendor is entitled to proceed as a mortgagor" [mortgagee].

The proceedings are in strict accordance with the above quoted section of the code, as explained and construed in *Amory* v. *Reilly, supra.*

It is, in the third place, contended that the court erred in admitting in evidence the note, title bond, the mortgage, the deed and its tender, and evidence of the demand for possession. What we have said in answer to the second objection disposes of this objection. If our ruling on that point is correct, the court committed no error in admitting such evidence. It was entirely competent and necessary to make out the case as made in the complaint.

The fourth objection urged to the action of the court below is based upon an alleged error in giving and refusing to give instructions. No valid objection has been pointed out to the instructions given, and we have been unable to

discover any.    Those asked and refused are the opposite of those given, and if the latter were correct, there could be no error in refusing the former.

It is next argued that the executory contract was void and could not be enforced, for the reason that the law which authorized the sale of the land in controversy empowered the governor and the commissioners of the House of Refuge to sell the same, and that the title bond was signed by the governor and only one of the commissioners, when there were three commissioners.    The contract was executed by the governor and the president of the board of commissioners of the House of Refuge.    We do not deem it necessary to decide whether the signature of the president of the board of control was sufficient, or whether the contract might have been enforced against the State, as the State acted upon such contract as valid and offered and tendered to the purchaser a valid deed of conveyance for such land.    The act in question provides, that " upon full payment of the purchase-money in such case, the governor is authorized, in the name of the State, to execute a deed to the purchaser, attested by the secretary and seal of State." Such a deed was made and tendered to the purchaser, on the condition that he paid the purchase-money.    This tender of a valid deed cured any irregularities that may have occurred in the executory contract.

The next objection calls in question the power of the governor and the commissioners of the House of Refuge to make a sale of the land in controversy.    The point relied upon is this :    The legislature of 1867 passed an act entitled "An act to establish a House of Refuge for the correction and reformation of juvenile offenders," the 25th and 26th sections of which read as follows :

"Sec. 25. For the purpose of carrying out the provisions of this act, the sum of fifty thousand dollars is hereby appropriated, to be paid out of the state treasury to said board of commissioners, upon the warrant of the governor, in such sums and at such times as he may deem necessary

McCaslin *et ux. v.* The State, *ex rel.* Evans, Auditor of State.

and proper. And in order to enable the governor to act inteliigently in drawing such warrants, the superintendent shall file with him monthly accounts current of all the receipts and expenditures of said institution during the preceding month, and an estimate of the probable receipts and expenditures for the month following, which report shall be also copied and retained in the books of the institution, and shall be from time to time examined and corrected, if found incorrect, by said commissioners, and shall, if deemed by him expedient, be communicated by the governor to the General Assembly.

"Sec. 26. Whereas, the State owns the following described tract of land, to wit: 'All that part of the south-east quarter of section one, in township fifteen north, range two east, contained in the following boundaries: Beginning in the Rockville road, at the south-west corner of said quarter section; running thence north, forty chains and twenty-five links, to the center of said section; thence east along the north line of said quarter section, twenty-one chains and forty-five links; thence south twenty chains; thence east six chains and seventy-five links; thence south twenty chains and twenty-five links to the south line of said section; thence west along said south line in said Rockville road, twenty-eight chains and twenty links, to the place of beginning; containing one hundred acres.' The governor and said commissioners are hereby authorized to sell the same for cash or on credit, and apply the proceeds thereof toward the purchase of other grounds and the erection of suitable buildings for the institution, and, upon the full payment of the purchase-money in such case, the governor is authorized, in the name of the State, to execute a deed to the purchaser, attested by the secretary and seal of the State."

It is insisted by counsel for appellants that the twenty-sixth section is unconstitutional and void, because the subject-matter is neither expressed in the title of the act, nor properly connected with the subject expressed in the title. This objection does not strike us with much force. The

subject of the act was the establishment of a House of Refuge for the correction and reformation of juvenile offenders.

It is provided by the second section of article nine of the constitution, that "the General Assembly shall provide houses of refuge for the correction and reformation of juvenile offenders." The legislature, in obedience to this imperative requirement of the constitution, passed the act in question. Inasmuch as such institution was to be established, controlled, and maintained by the State in her sovereign capacity, funds for its erection and maintenance had to be provided by the State. Would any one doubt that the twenty-fifth section, which appropriates out of the state treasury fifty thousand dollars for the maintenance of such institution, was constitutional and valid? We presume not. If the appropriation of money, to carry out the purpose designed to be accomplished by the act, is properly connected with the subject expressed in the title, why is not the sale of property belonging to the State, the proceeds of which were to be applied to the purchase of other grounds, and the erection of suitable buildings for such institution, not properly connected with such subject? Both the money and the land belonged to the State, and if the one could be appropriated under such a title, we are unable to see why the sale of the other might not be provided for, and an application of the proceeds made, to the accomplishment of the end proposed. It is quite certain that the title of the act in question is broad and comprehensive enough to embrace the twenty-sixth section.

It is urged that the court erred in excluding evidence tending to prove that the State had no right to sell or convey the lands in question. It is settled that a purchaser, who takes possession and claims the land by virtue of his purchase, and claims title from no other source, shall not, while claiming such right and title, deny the right of his vendor to sell to him. *Rogers* v. *Place,* 29 Ind. 577. The appellants were in possession at the commencement of the

action and claimed by virtue of the purchase from the State. The appointment of the receiver did not, in law, change the possession. The State was not placed in possession. The legal possession remained in the appellants; the right of actual enjoyment was suspended during the continuance of the litigation. It seems to us that the doctrine of technical estoppel, by deeds with covenants of warranty, has no application to the present case.

Finally, it is contended that the decree of the court below was erroneous in three respects: First, in decreeing the specific performance of the contract. Second, in decreeing the sale of the land for the payment of the debt. Third, in providing that the purchaser at the sheriff's sale might, by paying off the judgment within sixty days, be subrogated to the rights of the appellants.

It is expressly provided in section 791, upon which this action is based, that the court shall "order a specific performance of the contract in favor of the complainant, or the purchaser, in case a sale be ordered." There can be no doubt as to the propriety of the order for specific performance. It is also provided, that the court may, in the final decree, order the interest of the purchaser to be sold or transferred to the plaintiff, upon such terms as may be just. The court, instead of ordering the land to be transferred to the State, ordered it to be sold, and provided for a specific performance of the original contract in favor of the purchaser at the sheriff's sale, and that such purchaser might be subrogated to the rights of the original purchaser, by paying off the judgment within sixty days. It was within the power of the court to order the sale, but it is claimed that the court erred in decreeing the sale of the land in the first instance, there being, as is claimed, no proof of insolvency. We think there is such proof in the record. The complaint prayed for an injunction and the appointment of a receiver, upon the grounds that the purchaser was committing waste and was insolvent. In support of these allegations, affidavits were read by both parties, and they are made a part of the record

by a bill of exceptions, and they abundantly establish the insolvency of the purchaser. We think the decree was right in this respect. But it is claimed that that portion of the decree, which provided for the subrogation of the purchaser at the sheriff's sale to the rights of the original purchasers, deprives the appellants of the right secured to them by statute to redeem the premises within one year. While it is not very apparent to us to what rights of the original purchaser the purchaser at sheriff's sale was to be subrogated, it is quite clear that if the original purchaser has the right to redeem the premises under the statute (a question which is not before us, and which we do not decide), such right could not be impaired or taken away by the decree of the court.

We think the decree was in conformity with the statute upon which the proceedings are based.

We discover that we have omitted to refer to two other points relied upon by appellants, and they are, that the suit was improperly brought on the relation of the Auditor of State, and that the appellants were denied the right to prove the value of the sixty-five acres of land mortgaged by appellants as security for the land purchased of the State.

The sixth clause of section 2 of an act prescribing the powers and duties of the Auditor of State reads as follows:

"Sixth. Institute and prosecute, in the name of the State, all proper suits for the recovery of any debts, moneys or property of the State, or for the ascertainment of any right or liability concerning the same." We think that this authorizes a suit, in the name of the State, on the relation of the auditor. We think the appellants are in no condition to complain of the exclusion of the evidence in relation to the value of the lands mortgaged; for they proved by Governor Baker that such mortgage had been foreclosed, and the lands had been purchased by the State at the sum of eight hundred dollars. This obviously precluded further inquiry as to the value of such lands. The appellants, in the decree, were

credited with such sum. If such lands sold for less than their value, the appellants should have redeemed them.

We think the court below committed no error.

The judgment is affirmed, with costs.

DOWNEY, C. J., having been one of the commissioners of the House of Refuge when the contract of sale of said land was made, did not participate in the decision of the cause.

### ON PETITION FOR A REHEARING.

BUSKIRK, J.—A rehearing is asked in this case, not because the questions decided were decided wrong, but for the reason that we did not decide whether the appellants were entitled to redeem the land in question, under the act of June 4th, 1861, 2 G. & H. 251. We did not decide the question, because it was not before us. It is provided by the first section of the above recited act, that where any real property or interest therein shall be sold upon execution or order of sale issued upon any judgment, decree, or judicial proceeding within this State, the owner thereof, his heirs, executors, administrators, or any mortgagee or judgment creditor having a lien upon the same, may redeem such real property, or interest therein, at any time within one year from the date of such sale, by paying to the purchaser, his heirs, or assigns, or to the clerk of the court from which such execution or order of sale was issued, for the use of said purchaser, his heirs, or assigns, the purchase-money, with interest thereon at the rate of ten per cent. per annum. The right of the appellants to redeem, under such statute, depends upon whether they paid the money within the time limited therein. We are not advised by the record whether any steps have been taken looking to a redemption. We cannot, even to avoid a multiplicity of lawsuits, undertake to decide a question not presented by the record, or without any facts upon which to base a ruling.

The petition is overruled.